Donald Edward WOOD, Appellant,

v.

The STATE of Texas, State.

No. 2–86–232–CR.

Court of Appeals of Texas,
Fort Worth.

July 15, 1987.

Donald S. Gandy, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, David K. Chapman, Asst. Dist. Attys., Fort Worth, for the State.

Before FENDER, C.J., and BURDOCK and FARRIS, JJ.

OPINION

FENDER, Chief Justice.

Donald Edward Wood appeals his conviction for misapplication of fiduciary property valued from $200.00 to $10,000.00, a third-degree felony. See TEX.PENAL CODE ANN. sec. 32.45 (Vernon 1974). Appellant received a ten-year probated sentence upon his guilty plea to the court. In his sole point of error, appellant complains that the trial court erred in denying his written, pretrial motion to dismiss for violation of his right to a speedy trial. See TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Pamph.Supp.1987).

We affirm.

The crime with which appellant was charged occurred in Tarrant County on or about April 12, 1982. Approximately five months after the incident appellant moved to Montgomery County, Ohio. Between 1982 and 1985 appellant moved twice within Montgomery County but retained the same telephone number he first obtained there. Appellant used his correct name in telephone directory listings, in renting residences in Ohio, and in the jobs he held there.

On August 23, 1984, appellant was indicted with misapplication of fiduciary property and a warrant issued for his arrest. Appellant was not arrested prior to indictment, but the investigating officer, Robert Reusch, had obtained an Ohio address for appellant (which Reusch later found was no longer appellant's current address) and his correct telephone number before that time. On September 5, 1984, the arrest warrant and appellant's address were sent by letter to Montgomery County officials through the Tarrant County Sheriff's Office and the next day the State filed its announcement of ready.

Eleven days after the State announced ready, the Tarrant County Sheriff's Office received a letter from Ohio authorities requesting information on extradition. On September 24, 1984, Tarrant County officials responded by teletype advising the Ohio authorities that Tarrant County would extradite. After that date, Tarrant County officials did not in any way communicate with Ohio officials for approximately six months. On March 14, 1985, Reusch obtained appellant's current home address in Montgomery County by matching appellant's telephone number with information held by the telephone company. This information was immediately sent by teletype to the Ohio authorities. Still, it was not until May 31, 1985 that appellant learned there was a warrant out for his arrest. On June 6, 1985, appellant surrendered himself to Tarrant County officials and was arrested. By accepting appellant's appearance bond on this date, the State secured appellant's presence for trial. Neeson v. State, 722 S.W.2d 6, 7 (Tex.App.—Dallas 1986, no pet.).

Prior to the Court of Criminal Appeals' recent decision in Meshell v. State, cause no. 1339–85, slip op. at TC–87–25–83 (Tex.Crim.App., July 1, 1987) (not yet reported) this court had decided to reverse this cause with orders to dismiss the indictment for violating appellant's statutory right to a speedy trial.[1] In Me-

1. The facts in this case closely parallel the facts in Meshell. Prior to finding the Speedy Trial

Act unconstitutional, the Court found that the State had violated Meshell's rights under the Act. *See Meshell,* slip op. at TC–87–25–103. We came to the same conclusion as the following excerpt from our first decision in this case demonstrates:

In this case, the State had 120 days from the date of indictment to obtain appellant's presence for trial. *See Rios v. State,* 718 S.W.2d 730, 732 (Tex.Crim.App.1986); TEX.CODE CRIM.PROC.ANN. art. 32A.02, secs. 1(1), 2(a) (Vernon Pamph.Supp.1987). It is undisputed that appellant was absent from the date of indictment until June 6, 1985. Appellant concedes that the time periods from August 23, 1984 to September 24, 1984 and from March 14, 1985 until June 6, 1985 may be excluded. Appellant argues, however, that the State cannot bring within the excludable periods the expanse of time extending from September 25, 1984 to March 13, 1985, a period of 171 days.

The State relies on two subsections in section 4 of the Speedy Trial Act to justify the exclusion of this period of time. These sections read as follows:

Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

. . . .

(4) a period of delay resulting from the absence of the defendant because his location is unknown and:

(A) he is attempting to avoid apprehension or prosecution; or

(B) the state has been unable to determine his location by due diligence;

(5) a period of delay resulting from the unavailability of the defendant whose location is known to the state but whose presence cannot be obtained by due diligence or because he resists being returned to the state for trial.

TEX.CODE CRIM.PROC.ANN. art. 32A.02, secs. 4(4)–(5) (Vernon Pamph.Supp.1987).

We do not believe the facts of this case show that appellant was attempting to avoid apprehension and prosecution. Although appellant moved from the jurisdiction, he did so five months after the incident took place. Thereafter, he moved twice but stayed within the same county. Appellant testified that he did not learn of the warrant for his arrest until May of 1985. This fact indicates that the moves were not made to avoid apprehension. Also, appellant retained the same telephone number with each move and used his correct name in telephone directory listings. There is no evidence appellant used anything other than his proper name in Ohio. *See Newton v. State,* 641 S.W.2d 530, 531 (Tex.Crim.App. 1982).

The question we must address then is whether the State used due diligence in trying to obtain appellant's presence. The Court of Criminal Appeals has held that where the defendant's surety bond was arbitrarily rejected by the Sheriff's office and no other attempts were made to obtain the defendant's presence within the required time period, the State had failed to show due diligence under section 4(5). *See Lyles v. State,* 653 S.W.2d 775, 779 (Tex.Crim.App.1983). The facts in *Lyles* show that following the rejection of the defendant's second surety bond the prosecutor secured approval by the trial court by telephone for a court setting. The State argued that actions by the Sheriff's office could not be deemed prosecutorial delay, which is the focus of the Speedy Trial Act. *See id.* at 778; *Barfield v. State,* 586 S.W.2d 538, 541 (Tex.Crim.App. 1979). In answer, the Court stated:

The prosecutor cannot excuse a lack of due diligence on his part by pointing the finger at the Sheriff or other law enforcement agency. The circumstances reflect the situation was resolved once the prosecutor began to exercise diligence in the matter. The delay is attributable to the prosecuting authority and not the court. The delay could have, and should have been avoided by simple means, not requiring any stenuous [sic] exercise of due diligence by the State.

*Lyles,* 653 S.W.2d at 779.

In *Beddoe v. State,* 681 S.W.2d 114 (Tex. App.—Houston [14th Dist.] 1984, pet. granted), the Court of Appeals found that the State failed to show due diligence on its part under section 4(4)(B). *See id.* at 115. The evidence established in *Beddoe* that a warrant was issued, delivered to the Harris County Sheriff's Office, and entered into the T.C.I.C. and N.C. I.C. Networks. No other attempts were made, however, to serve the warrant. *See id.* On the other hand, the same Court of Appeals has held that where there had been some confusion regarding the defendant's status with the parole office and appellant's last name was misspelled on the indictment, the State had shown due diligence by repeatedly, though unsuccessfully, attempting to serve the warrant in areas they believed the defendant frequented and by thereafter entering the defendant's name and fugitive status into the Crime Computer System. *See Miguez v. State,* 715 S.W.2d 795, 797–98 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

We find that the facts of this case fall more in line with the holdings in *Lyles* and *Beddoe.* The assistant district attorney assigned to the case testified that he spoke with the Sheriff's office twice about the Wood case between appellant's indictment and arrest. He also stated that he did nothing to check the address sent to Ohio with the indictment.

Reusch testified that probably sometime after the warrant was issued he provided the information he had on appellant to the Sheriff's office, although it is unclear whether appellant's telephone number was so provided when the warrant was first sent to Ohio. Thereafter, Reusch checked the status of all non-arrest cases on a weekly basis. It was not until March of 1985 that Reusch became concerned about the delay in appellant's arrest. At that time, Reusch obtained appel-

*shell,* however, the Court held that the entire Texas Speedy Trial Act (article 32A.02) and article 28.061 of the Texas Code of Criminal Procedure are unconstitutional for violating the separation of powers doctrine of the Texas Constitution. *See Meshell,* at ——. We, therefore, must overrule appellant's sole point of error.

The conviction is affirmed.

lant's current address by means of a simple telephone call to the Ohio telephone company.

A deputy sheriff, Barbara Williams, related what steps the Sheriff's office took to locate appellant. Williams testified that the letter of September 5, 1984 was sent after identification information on appellant was entered with the National Crime Information Center, checked against appellant's driver's license, and matched with information held by the agency that filed the case. Thereafter, the only efforts made by the Sheriff's office were the dispatch of the September 24, 1984 teletype concerning extradition and the March 14, 1985 teletype containing appellant's current address.

It is clear, then, that between September 24, 1984 and March 14, 1985 the only effort made by Tarrant County officials to locate appellant was Reusch's act of checking the status of non-arrest cases. The State claims this act establishes due diligence on its part and that the State cannot be blamed for delays caused by the Ohio authorities. We find, however, that this delay was caused by the State's failure to make a simple telephone call to verify appellant's address, which no doubt would have routinely been done had the telephone number provided them been a local one. The State cannot now excuse its lack of due diligence by pointing a finger at another law enforcement agency. *See Lyles,* 653 S.W.2d at 779. This delay could have been avoided by simple means, not requiring any strenuous exercise of due diligence by the State. *Id.* Appellant's sole point of error is sustained.